EDWIN K. SCRANTON and WILLIAM H. OTIS, Respond-
ents, v. ALVA CLARK, Appellant.

*Goods and Chattels— Vendor—Possession— Warrantee.*

Where the vendor is not in possession, a sale of a chattel is, in effect, an
agreement to sell, and no warrantee of title is to be implied.

This is an appeal to this Court from an order of the Supreme
Court, at General Term, reversing the judgment for the Defend-
ant, and ordering a new trial; the Defendant giving the usual
stipulation on such appeal.

The action was upon a promissory note made by Clark, the De-
fendant, for $2,673.37, dated October 16, 1855, payable one year
after date, to the order of E. B. Litchfield.

Elisha B. Litchfield transferred the note, before its maturity, to
A. G. Jerome, endorsing it without recourse.

A. G. Jerome sold and transferred the note to Edwin C. Litch-
field, in December, 1857. And when he sold and transferred the
note, Jerome delivered it to Edwin C. Litchfield, who had posses-
sion of it from December, 1857, to August, 1860, and Jerome had
no interest in the note, nor any control or possession of it during
that period.

In August or September, 1860, Edwin C. Litchfield transferred
the note back again to Jerome, in some transaction between them,
and delivered it to him.

In September, 1860, a few weeks after Jerome had thus again
received and become the owner of the note, he sold and transfer-
red and delivered it to Elisha B. Litchfield.

Elisha B. Litchfield shortly afterwards transferred and delivered
the note to Scranton and Otis, the present Plaintiffs. They sued
upon it in September, 1860.

Each of the transfers thus enumerated was accompanied by de-
livery of the note in question.

The defence was, that the note was paid. The alleged payment

was made to William W. Leland, by crediting him $300 on a note of his in the fall of 1858. Leland, in 1858, exchanged some wild land in Wisconsin, which he considered comparatively worthless, with Jerome, for certain overdue notes, of which he thought no better. He supposes that this note was one of the parcel. Leland never had this note in his possession at all.

He left other notes, which he undoubtedly bought in the transaction with Jerome, with a clerk of Jerome's, and took them away, from time to time, as he had occasion to use them.

In the fall of 1859, after the transaction between Clark and Leland, in which Clark claims to have paid this note to Leland, Leland gave Clark an order on Jerome for the note.

Clark presented this order to Jerome, who was at the time out of health and out of business. He supposed, from Clark's statement, without having any means of refreshing his recollection or looking at papers, that this note was one of those which he sold to Leland, and signed a paper admitting it, under that impression.

The Court charged the jury as follows:—1st. That if Jerome was the owner of the note in 1858, when it was said he sold it to Leland, and he did so sell it, but did not deliver it, then the note is paid, and the Plaintiffs cannot recover.

2d. That if Jerome was not the owner of the note in 1858, at the time he is said to have sold it to Leland, and he did so sell it, and he afterwards became the owner of it, then if Clark had paid it to Leland, who had purchased it, the Plaintiffs cannot recover, because Jerome must be deemed to have warranted the title, and if he acquired the title after a sale to Leland, it then became extinguished by operation of law.

To this proposition the Plaintiffs' counsel excepted. The jury returned a verdict for Defendant, upon which judgment was duly entered; and upon appeal the General Term reversed that judgment and ordered a new trial, and the Defendant appeals from this judgment to this Court.

*L. S. Chatfield* for Appellant.

*James Emott* for Respondents.

BACON, J.—If the charge of the learned Judge upon the trial had stopped at the first proposition enunciated by him, it is possible the verdict might be upheld, because it may, perhaps, be said, that there is some evidence from which the jury might possibly have found that Jerome was the owner of the note in 1858, when it is claimed that he sold it to Leland. The uncontradicted, and, indeed, overwhelming evidence is, that in December, 1857, the note in controversy was sold and delivered to Edwin C. Litchfield, who held it as owner from that time until August or September, 1860, when he sold and transferred it to Jerome, who soon after disposed of it to Elisha B. Litchfield, from whom the Plaintiffs derive their title. It is quite likely that in the transaction between Jerome and Leland, which occurred in the fall of 1858, both parties supposed that this note was among the bundle of securities that were traded off for the wild land; but it is as nearly certain as it can well be rendered by testimony that Jerome had not then either the possession or ownership of the note; and it can hardly be claimed that the jury, if that naked proposition had been left to them upon the testimony, could have found any such facts. The utmost that can be insisted the testimony conduces to prove, it seems to me, is, that Jerome agreed to sell this note, with others, in exchange for the land; that the other notes were handed to the clerk of Jerome, or to Jerome himself, who held them as the depositary of Leland, but that this note was not among the number, and was never in the possession of Leland, or that of his agent.

Assuming this to be the state of the case, the jury were instructed that if they believed that Jerome sold—that is, in effect agreed to sell—this note to Leland, although he was not the owner at the time of this agreement, yet, as he afterwards became the owner, his agreement implied a warrantee of title, and this subsequently acquired title enures to the benefit of Leland, his vendee, and payment to him extinguished the note. Upon this proposition the jury were authorized to find, as they did, a verdict for the Defendant; and the question is, whether the proposition is sound in law—in other words, is there an implied warrantee of title in the sale of a chattel where the owner is not in possession?

It is to be assumed that there was an express affirmation of title by Jerome to Leland.

There was on the one hand, a sale of wild lands, and on the other, a sale and transfer by delivery of certain notes, and an agreement to sell another note, but of which no assignment or delivery was made, and no written transfer executed, purporting to convey a present interest or one in future.

On this precise question—as to the implication of a warrantee on the sale of a chattel not in possession of the vendor at the time—Chancellor Kent, in his Commentaries, states the doctrine without qualification* to be, that the rule of caveat emptor applies, and the party buys at his peril (2 Kent's Com. 478). He adds that, "if the seller has possession of the article, and sells it as his own, and not as agent for another, and for a fair price, he is understood to warrant the title." In support of the rule as thus stated, he cites two or three old cases in the English books. The first is the remark of Tanfield, Chief Baron, in Cro. Jac. 197, to the effect that, if one sell land whereof another is in possession, or a horse whereof another is in possession, without covenant or warrantee for the enjoyment, it is at the peril of him who buys, and it is not reason that he should have an action at the law, where he did not provide for himself. In Medina *v.* Stoughton (1 Salk. 210), Holt, C.J., decided that, where one having possession of a chattel sells it, the affirmation that it is his amounts to a warrantee; but aliter where the seller is out of possession, for there may be room to question the seller's title, and caveat emptor in such case to have either an express warrantee or a good title. These cases seem to have settled the law in England in conformity with the principle laid down by Kent, and we have been cited to no authority doubting or questioning them, unless such an inference may arise from the remark of Buller in Pasley *v.* Freeman (3 Term Rep. 58), which, however, is merely to the effect that, if the seller affirms the chattel not in his possession to be his, he is bound to answer for the title, for, in such case, the vendee has nothing else to rely upon. This places the liability upon the ground of an affirmation amounting to a warrantee, and is not at all incon-

sistent with the principle enunciated in the two cases on which the rule, as stated by Kent, is formed.

In this State the same question was presented, and is very fully discussed, both on principle and authority, in the case of McCoy *v.* Artcher (3 Barb. 323). The effect upon the question of warrantee of title upon a sale, where the property is in or out of the possession of the vendor, is there considered, and the propositions are established, that possession by a vendor of chattels is equivalent to an affirmation of title ; and in such case the vendor is held to an implied warrantee of title, even although nothing be said on the subject between the parties. But, if the property sold be, at the time of the sale, in the possession of a third party, and there be no affirmation, or assertion of ownership, no warrantee of title will be implied. In these circumstances, in order to attach any liability to the vendor upon a sale, there must be an affirmation which will amount to a warrantee of the title.

The principle established by this case is followed, and affirmed in Edick *v.* Crim (10 Barb. 445), where the Court cites the case in Cro. Jac. 197, and say the general rule is, that though the vendor of a chattel impliedly warrants the title, yet, when the chattel is not in the vendor's possession, but in that of another, this rule does not prevail. In Hopkins *v.* Grinnell (28 Barb. 533), where the same point arose, the decision was to the same effect, and the proposition, in the terms laid down by Kent, was reiterated and approved.

It is not important to cite authorities from other States, several of which are quoted in the opinion of the Court in the case of McCoy *v.* Artcher, and are to the same effect. These cases in our own Courts settle the doctrine with us, from which there has been no dissent from the earliest case to the present time. The effect of these decisions is sought to be evaded by the assertion of the Defendant's counsel that, in these cases, the vendor had had possession of the things sold, either before or after the sale, while Jerome not only had possession before he sold, but afterwards. It is not perceived how this fact, conceding it to exist, can vary the principle. The counsel in this part of the argument also insists

that Jerome was the owner, and had possession of the note when he sold it. If this were conceded the argument would be at an end, and the proposition we have been employed with immaterial. But it is to be remarked, that the weight of evidence is entirely otherwise; and in the proposition laid down by the Court in this case, the Judge assumes that Jerome was not the owner of the note at the time of the alleged sale, as he undoubtedly was not in fact, but that it was his subsequent acquisition of the title that enured to the benefit of the vendee, so that he could sue the vendor upon an implied warrantee, which, as we have seen, the law does not create, but expressly repudiates. In the case of McCoy *v.* Artcher, the note, which was the subject of the sale, was potentially in the possession of the Defendants, being held by an agent, for their benefit, some time prior to the transaction by which they were sought to be charged.

It is said by the Defendant's counsel that the certificate of Jerome to Clark estops him from making any claim on the note against Clark, and this estoppel followed the note into the hands of those deriving title from Jerome. It is quite questionable whether this certificate was properly admitted in evidence, the effect being, if it had any, to impeach the title to a chose in action, in the hands of another party, after Jerome had parted with it. But, it could not operate as an estoppel, for the simple and obvious reason, that it was given long after the time that Clark had dealt with Jerome, and had professedly bought the note, and he was induced to no action whatever upon the strength of that certificate, or of any representation made in it. It lacks all the elements of a legal and equitable estoppel, and should probably have had no influence in the case.

I think the judgment of the General Term should be affirmed, and judgment, in accordance with the stipulation, rendered for the Plaintiff for the amount of the note and interest, with costs.

Affirmed.

JOEL TIFFANY,
State Reporter.