# NEW YORK SUPERIOR COURT.

JOHN McHUGH agt. THE IMPERIAL FIRE INSURANCE COMPANY.

*Reformation of policy of insurance.*

In order to justify the reformation of a policy of insurance the evidence must show a mistake to have been made by both parties, and that the instrument is not such as it was intended to be when issued and received.

A mistake on one side may be ground for rescinding a contract or for a refusal specifically to enforce its terms, but not for its alteration, and the imposition upon the other party of obligations and liabilities which he never intended to assume.

*Special Term, December,* 1874.

ACTION to reform a policy of insurance.

*W. B. Putney,* for plaintiff.

*N. B. Hoxie,* for defendant.

VAN VORST, *J.* — In order to justify the reformation of this policy of insurance, the evidence should satisfactorily establish that a mistake has been made by both parties, and that the instrument in question is not, in the particulars now complained of by the plaintiff, such as it was intended to be when issued and received.

It is not enough to sustain an action of this nature, that, upon examination of one of the parties thereto, long after the receipt of an instrument by him, he discovers that it is not such in its terms and conditions as he believed it to be at the time he received it. In order that it be reformed it

must further appear that in the same respects it was not such an instrument as the party obligated intended to execute.

The mistake must be mutual. A mistake on one side may be a ground for rescinding a contract, or for a refusal specifically to enforce its terms, but not for its alteration, and the imposition upon the other party of obligations and liabilities which he never intended to assume (*Adams' Equity*, 171 ; *Nevins* agt. *Dunlap*, 33 *N. Y.*, 676 ; *Story* agt. *Conger*, 36 *N. Y.*, 673 ; *Rider* agt. *Powell*, *N. Y Court of Appeals Decisions*, 4 *Abbott*, 63 ; *Ervin* agt. *N. Y. Central Ins. Co.*, 3 *N. Y. Sup. Ct. Reps.*, 213). Conceding that the evidence shows that the plaintiff through his agent, Dunham, applied in general terms for a renewal of the policy before its expiration, and that the then existing policy contained the words " other insurance allowed without notice." I am not satisfied from the evidence that the defendant agreed to a renewal on those terms.

In fact the evidence shows that the risk was not renewed by renewal receipt as was usually the case, but that on the other hand a new policy was made out, dated on the 28th October, 1871, and was within a few days thereafter delivered to the agents of the plaintiff, and received and retained by them without objection.

In this policy no provision was made for the allowance of other insurance without notice.

Such provision, when made, is usually entered in a blank space in the body of the policy, after the description of the subject of insurance and its location, and would require to be written in.

There is no such writing in the policy in question, and the omission of such words is discoverable directly the policy is opened and examined.

The policy was received for the plaintiff by insurance brokers, his agents, who were specially familiar with such instruments, and was by them transmitted to the plaintiff.

The insured has testified that he did not discover the omis-

sion of these words until after his property was destroyed by fire, and nearly a year after the policy was received by him.

The omission of the insured at the time to examine the policy affords no valid reason for now writing in the policy new words to obviate the consequences of his acts, which appear to have avoided the policy; most certainly not, if the defendant did not intend originally that they should be there.

The clerk of the defendant who directed the filling up of the policy says, distinctly, that he was instructed by his superior in the office to omit from the policy in question the clause granting such permission.

From this it would seem that the policy is such as the defendant intended at the time to write.

And the intention to omit these words is more clear, if the policy in question, as is claimed, was written from the memorandum made in the policy register, in 1869, which contained the omitted words.

Twice, at least, after the issue of the policy, and before the fire, the policy was presented by the plaintiff, or on his behalf, to the underwriters for alteration. On one occasion, a material change was made in the character of the risk by the erasure of certain words; and, on another, an indorsement was made, declaring the policy originally taken out in the name of the plaintiff and another, to be held for plaintiff's exclusive benefit, and new privileges were conceded.

Under such circumstances it is difficult to conceive how the insured could be ignorant of the terms of the policy. He should be held to have adopted the instrument. No reasonable excuse for ignorance can be well assigned.

There is no just foundation for any charges that the action of the defendant, in omitting the words in question, was fraudulent.

There was no attempt at concealment or deception. The language of the policy is plain, and the space in which the permission if conceded should have been written, is left

McHugh agt. Imperial Fire Insurance Company.

conspicuously blank and open to discovery on the most casual inspection of the policy by the plaintiff, or the insurance brokers, his agents, who were familiar with the entire subject.

And if this privilege was asked for by the agents of the plaintiff, at the time of the application for the renewal of the insurance, the delivery of the policy to them was a distinct notice that such permission was not then conceded (*Pindar* agt. *The Resolute Fire Ins. Co.*, 47 *N. Y.*, 117).

The granting of the relief asked in this action would be substantially to impose upon the defendant conditions and terms to which they never assented, and to deprive them of the privilege of canceling the risk and avoiding all liability which they would have had if this permission had been insisted upon before the fire and they continued indisposed to yield the point.

The case in its results, if the views here expressed be correct, deprives the plaintiff of indemnity for his loss from the defendant. But the mistake if any, through which he fails is his own, and is the result of the oversight and neglect of himself and his agents.

But it would not answer to cast upon the defendant, by placing them under the obligations of a different contract from that to which they assented, consequences for which they are not responsible.

There should be judgment for the defendant.